UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ODIA HALCOMB JR., | ) | CASE NO. 3:21-cv-01372 |
| | ) | |
| *On behalf of himself and all others similarly situated,* | ) | JUDGE JACK ZOUHARY |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| TAIHO CORPORATION OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

The Parties respectfully and jointly move the Court to approve the proposed Settlement reached by the Parties and memorialized in the *Agreement of Settlement and Release* ("Settlement Agreement") attached as Exhibit 1. The Settlement seeks to resolve all wage-and-hour claims of the Named Plaintiff and other Participating Employees as defined in the Settlement Agreement that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff and other Participating Employees representing a substantial percentage of the potential value of their claims. The Parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

Exhibit 1:     *Agreement of Settlement and Release* ("Settlement Agreement");

Exhibit 2:     Proposed Final Order and Judgment Approving Settlement and Dismissing Action;

Exhibit 3:     Exhibit A to Settlement Agreement –
Individual Payments Allocation Schedule; and

Exhibit 4:     Declaration of Plaintiffs' Counsel.

The attached Memorandum in Support explains the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

Respectfully submitted,

| | |
|---|---|
| */s Kevin M. McDermott II* | */s Naureen Amjad (via email consent)* |
| Joseph F. Scott (0029780) | David J. Stein |
| Ryan A. Winters (0086917) | Naureen Amjad |
| Kevin M. McDermott II (0090455) | Riebana E. Sachs |
| SCOTT & WINTERS LAW FIRM, LLC | MASUDA, FUNAI, EIFERT & MITCHELL, LTD. |
| The Caxton Building | 203 N. LaSalle Street, Suite 2500 |
| 812 Huron Rd. E., Suite 490 | Chicago, Illinois 60601-1262 |
| Cleveland, OH 44115 | P: (312) 245-7500 |
| P: (216) 912-2221    F: (216) 350-6313 | F: (312) 245-7467 |
| jscott@ohiowagelawyers.com | dstein@masudafunai.com |
| rwinters@ohiowagelawyers.com | namjad@masudafunai.com |
| kmcdermott@ohiowagelawyers.com | rsachs@masudafunai.com |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

ii

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................ iv

Memorandum in Support .......................................................................................... 1

I.     The Litigation ................................................................................................ 1

       A.    Facts and Procedural History ............................................................. 1

       B.    Discovery and Document Analysis ..................................................... 2

II.    The Negotiations ........................................................................................... 3

III.   The Terms of the Settlement and Release of Claims ...................................... 4

       A.    The Scope of Settlement ..................................................................... 4

       B.    The Settlement Payments and Distributions ....................................... 4

IV.   The Propriety of Approval ............................................................................. 6

       A.    The Seven-Factor Standard is Satisfied ............................................. 6

       B.    The Settlement Payments Are Fair, Reasonable, and Adequate ........... 9

       C.    The Service Award to the Named Plaintiff is Proper and Reasonable ................. 10

       D.    Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable ................. 11

V.    Conclusion .................................................................................................. 15

Certificate of Service ............................................................................................ 16

Certificate of Compliance with Page Limitation Requirements .................................... 16

# **TABLE OF AUTHORITIES**

**Cases**

*Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343 (6th Cir.2000) .................................................. 12

*Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist.
    LEXIS 199053 (Nov. 18, 2019)........................................................................................ 10

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................................ 11

*Carter v. Hickory Healthcare, Inc.*, 905 F.3d 963 (6th Cir. 2018) ............................................... 12

*Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS
    169237 (Oct. 4, 2017) ....................................................................................................... 8

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ................................................ 10

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. 2010) ................................................. 7

*Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist.
    LEXIS 20446 (Mar. 8, 2010)............................................................................................ 10

*Fegley v. Higgins,* 19 F.3d 1126 (6th Cir. 1994) .................................................................. 11, 12

*Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020) ........................................................ 12

*Funk v. Airstream, Inc.*, S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334 (Sep.
    23, 2019) ......................................................................................................................... 12

*Geier v. Sundquist*, 372 F.3d 784 (6th Cir.2004)....................................................................... 12

*Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS
    67887, 2011 WL 2532922 (June 24, 2011) ...................................................................... 8

*Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir.1992) ............................................ 8

*Guzman v. Chipotle Mexican Grill, Inc.,* N.D.Cal. No. 17-cv-02606-HSG (KAW), 2018
    U.S. Dist. LEXIS 198933 (Nov. 21, 2018)......................................................................... 3

*Harris v. Best Buy Stores, L.P.,* 2017 U.S. Dist. LEXIS 145936, 2017 WL 3948397 (N.D.
    Cal. Sept. 8, 2017)............................................................................................................ 3

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ........................... 12

*Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS
    182622 (Oct. 22, 2019) ..................................................................................................... 7

iv

*In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990) ............................................................................................................ 10

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) ............................ 10

*Jackson v. Trubridge, Inc*., N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782 (N.D.Ohio Jan. 26, 2017) ................................................................................................ 7

*Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145 (Dec. 9, 2019) ......................................................... 14

*Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544 (June 16, 2008) ...................................................................................................................... 6

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ................................ 6

*Monroe v. FTS USA, LLC*, 6th Cir. No. 20-6289/6347, 2021 U.S. App. LEXIS 33235 (Nov. 8, 2021) ................................................................................................................ 12

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................................ 9

*Osman v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222 (N.D.Ohio May 4, 2018) ............................................................................................. 7, 10

*Posner v. Showroom, Inc*., 762 F.2d 1010, 1985 U.S. App. LEXIS 14544 (6th Cir.1985) .......... 11

*Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 398146 (N.D. Ohio August 22, 2008) .............................................................................. 8

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 2008) .......................................................................... 11

*Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613 (6th Cir.2021) ..................... 12

*Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722 (Apr. 30, 2018) ........ 14

*Salinas v. United States Xpress Ents., Inc*., E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800 (Mar. 8, 2018) ................................................................ 10

*Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584 (Mar. 13, 2017) .............................................................................................. 7, 8

*Smyers v. Ohio Mulch Supply Inc*., 6th Cir. Nos. 21-3008, 21-3009, 2021 U.S. App. LEXIS 19634 (July 1, 2021) .......................................................................................... 12

*Snook v. Valley OB-GYN Clinic, P.C.,* E.D.Mich. No. 14-cv-12302, 2014 U.S. Dist. LEXIS 177517 (Dec. 29, 2014) .................................................................................... 7

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495 (6th Cir.1984) ..................... 11

v

*Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist.
LEXIS 142325 (W.D. Ky. Oct. 13, 2016) ...................................................................... 14

**Statutes**

29 U.S.C. § 201 ............................................................................................................... 1

O.R.C. § 4111.01 ............................................................................................................. 1

O.R.C. § 4111.10 ........................................................................................................... 11

**Regulations**

29 C.F.R. § 778.115 ......................................................................................................... 2

29 C.F.R. § 778.207 ......................................................................................................... 2

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      <u>THE LITIGATION</u>**

**A.  Facts and Procedural History**

Named Plaintiff Odia Halcomb Jr. filed Case No. 3:21-cv-01372 *on behalf of himself and all others similarly situated* on July 16, 2021 seeking relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01, *et seq.* (ECF No. 1.) Plaintiff's Complaint alleged that Defendant Taiho Corporation of America ("Taiho" or "Defendant") violated the FLSA and Ohio law by failing to pay overtime compensation to Plaintiff Halcomb and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek. (*Id.* at PageID ##4-6, ¶¶ 17-29.) Plaintiff's Complaint sets forth two separate counts as follows:

- Count I – a claim for violation of the FLSA's wage provisions, 29 U.S.C. §§ 201-219; and

- Count II – a claim for violation of Ohio's wage laws, Ohio Rev. Code §§ 4111.01, *et seq.*

Defendant Taiho is an automotive parts manufacturer located in Tiffin, Ohio. Plaintiff Odia Halcomb Jr. was employed by Defendant from approximately July 2020 to July 8, 2021 as an hourly nonexempt employee.

As alleged in the Complaint, Defendant violated the FLSA and Ohio law by failing to pay overtime compensation to Plaintiff and other similarly-situated employees at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek. Taiho's alleged wage and hour violations are relatively straightforward. Taiho allegedly did not properly calculate the regular rates of workers when paying overtime compensation because it

excluded categories of "remunerations of employment" that must be included in the regular rate. *See* 29 U.S.C. § 207(e). In determining their regular rates, Taiho allegedly did not include the wages paid to workers in the form of non-discretionary payments such as shift premium payments. Taiho's requirements as to this alleged violation are summarized in 29 C.F.R. § 778.207:

> (b) Nonovertime premiums. The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an addition of so many cents per hour) and premiums paid for hazardous, arduous or dirty work....

In addition, 29 C.F.R. § 778.115 controls when employees are paid at two or more rates:

> Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

According to Plaintiff, Taiho failed to include shift premium (also known as shift differential) payments in computing the "regular rate." Plaintiff alleged that these violations occur across the board for all hourly non-exempt workers.

While the math pertaining to the alleged violation is straight forward, obtaining the alleged unpaid wages on a class-wide basis at trial or through dispositive motion, as described above, would be no easy task. In particular, Plaintiff would need to: (1) convince the Court that the overtime claims should proceed to trial on a collective basis under 29 U.S.C. § 216(b); and (2) defeat Defendant's legal and factual arguments that any violation was not willful and that Defendant is entitled to a good faith defense.

**B.  Discovery and Document Analysis**

The Parties engaged in discovery, and Defendant produced voluminous wage-and-hour data and documents necessary to fully and fairly evaluate the claims of the Plaintiff and other Participating Employees. Prior to engaging in settlement negotiations, Defendant provided Plaintiff Microsoft Excel spreadsheets and PDF documents containing payroll and payment information for approximately 10%[1] of the covered employees. Plaintiffs' Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. Plaintiff's damages computation considered approximately 4,000 data points and permitted a calculation of the alleged unpaid wages for all covered workers. Based on Plaintiff's analysis, in a best-case scenario, Plaintiff and other non-exempt hourly employees were entitled to $16,564.59 in back overtime wages. The documents and data were extensively analyzed by both sides to assess the strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## II.     THE NEGOTIATIONS

Settlement negotiations were long and contentious. In advance of negotiations, Plaintiff prepared a comprehensive damages analysis methodology. The Parties' subsequent negotiations resulted in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel. (*See* Decl. of

---

[1] Notably, courts have found significantly smaller sample sets statistically significant for discovery purposes. *See, e.g., Guzman v. Chipotle Mexican Grill, Inc.,* N.D.Cal. No. 17-cv-02606-HSG (KAW), 2018 U.S. Dist. LEXIS 198933, at *8-9 (Nov. 21, 2018) (approving 5 percent sampling); *Harris v. Best Buy Stores, L.P.,* 2017 U.S. Dist. LEXIS 145936, 2017 WL 3948397, at *9-10 (N.D. Cal. Sept. 8, 2017) (approving less than 5 percent sampling).

3

Counsel, Ex. 4.) Formal settlement documents, including the Settlement Agreement attached as Exhibit 1, were later prepared and executed for approval by the Court.

The result in this case was exemplary. As a result of this negotiated settlement, after the payment of attorneys' fees and costs, Plaintiff and the Participating Employees will receive approximately 150% of their alleged unpaid overtime damages they could have received had they proven a willful violation under 29 U.S.C. § 216(b). (*See* Section IV below.) Without question this settlement represents a fair, just, and reasonable resolution of this case.

## III. THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A. The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve deeply disputed claims between the Parties. The Settlement will resolve wage-and-hour claims of the Named Plaintiff and all other participating employees who affirmatively agree to be bound by the Settlement. As highlighted below, Plaintiffs' Counsel and Defendant's Counsel believe that Settlement is appropriate because the Released Claims are being compromised without the need to establish the elements of those claims on which liability turns, in addition to providing a substantial recovery to Named Plaintiff and all other participating employees in light of the procedural and substantive encumbrances underscored by Defendant. Named Plaintiff and Plaintiffs' Counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. (*See* Exs. 1, 4.) Named Plaintiff and Plaintiffs' Counsel, however, also recognize the risk and expense of trying and, if necessary, appealing this action, and believe that the Settlement confers substantial benefits upon the Plaintiffs. (*Id*.)

### B. The Settlement Payments and Distributions

**Total Settlement Amount.** Defendant has agreed to pay the maximum settlement amount of $45,515.97 as set forth in the Settlement Agreement. (Ex. 1 ¶ 3.) That sum will be used to make settlement payments to participating employees which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by Plaintiff and other participating employees; (2) attorneys' fees and reimbursed litigation expenses; (3) service award; and (4) any other obligations of Defendant under the Settlement Agreement.

**Payments to Participating Employees.** From the total settlement amount, the maximum amount of $24,846.89 will be paid to the participating employees, including the Named Plaintiff. The proposed method of allocating the class payments is reasonable and fair to all. Payments to participating employees are based proportionally on each participating employees' respective weeks of service to Defendant during the relevant period of January 16, 2021 to July 16, 2021.

If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and other (current and former) participating employees representing a substantial percentage of the potential value of their claims, and achieves an excellent result for the covered workers. To the extent they decide to participate, each of the 91 workers will receive approximately 150% of their calculated overtime damages. Inherent in the proposed distribution method in which participating employees are distributed settlement payments based proportionally on each participating employees' respective weeks of service to Defendant during the relevant period of January 16, 2021 to July 16, 2021, the settlement proposal treats participating employees equitably relative to each other. Named Plaintiff Halcomb, as a participating employee, will participate in the recovery under the same procedure applicable to other covered workers.

5

**Service Award.** The proposed Settlement provides for an individual service award to Named Plaintiff Halcomb in the amount of $750 in recognition of his assistance to Plaintiffs' Counsel and his direct contributions to achieving the Settlement on behalf of all participating employees. The proposed service award is well-earned. Among other things, Plaintiff Halcomb consulted with Plaintiffs' Counsel at critical stages and provided important and necessary documents and information throughout the course of the litigation. Plaintiff Halcomb's contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement.

**Attorneys' Fees and Cost Reimbursements.** From the Total Settlement Amount, Plaintiffs' Counsel will receive attorneys' fees and costs in the total amount of $19,919.08. After reductions for costs and litigation expenses in the total amount of $419.08, the attorney fee recovery will equal $19,500.00. (*See, e.g.,* Ex. 4, Decl. of R. Winters at ¶¶ 31, 38.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel. (*Id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel will not be paid by Defendant until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Named Plaintiff and other participating employees. (*See* Settlement Agreement at ¶¶ 5-6.)

## IV.  THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown below, Court approval here is strongly supported by established authority.

### A. The Seven-Factor Standard is Satisfied

This Settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b). The court presiding over an FLSA action may approve a proposed settlement of the action under §

216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2-3 (June 16, 2008), fn. 1 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute")); *Hill v. Medicare Transport, Inc*., N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS 182622, at *2 (Oct. 22, 2019); *Jackson v. Trubridge, Inc*., N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017) (quoting  *Kritzer v. Safelite Solutions, LLC,* S.D.Ohio No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (May 30, 2012)); *Osman v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D.Ohio May 4, 2018).

In *Hill*, 2019 U.S. Dist. LEXIS 182622, at *2, a court within this district used seven factors to evaluate whether the proposed settlement was fair and reasonable for purposes of the FLSA, 29 U.S.C. § 216(b):

> (1) [T]he existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

(Citing *Snook v. Valley OB-GYN Clinic, P.C.,* E.D.Mich. No. 14-cv-12302, 2014 U.S. Dist. LEXIS 177517, at *3 (Dec. 29, 2014), citing *Dees v. Hydradry, Inc*., 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). *See also Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) ("the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement.") (citing *Crawford v. Lexington-Fayette Urban Cty. Govt*., E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, 2008 WL 4724499, at *3 (Oct. 23, 2008) (further citation omitted)). "The court may choose to

consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017) (quoting *Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at * 3 (June 24, 2011)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *14 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008), citing *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-1206 (6th Cir.1992)).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendant's liability, which Defendant vehemently denies, but also each employee's overtime damages. Wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. The Parties engaged in substantial document review, comprehensive payroll and wage and hour records analysis, and due diligence prior to arduous negotiations, and the issues were well understood – as noted above, the Parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents, including a computational methodology that considers approximately 4,000 data points and permits a calculation of the alleged unpaid wages for the covered employees. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The settlement was reached as a result of arms-length negotiation between Parties represented by competent counsel.  *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *4-5. As noted above, to the extent they decide to participate in the settlement, each of the

covered workers will receive approximately 150% of their calculated overtime damages. (*See* Exs. 1, 4.) Prior to negotiations, Plaintiff's demand pertaining to the overtime wage damages was $16,564.59; however, after the payment of attorney fees and all other litigation costs and expenses, the amount of $24,846.89 will be paid to the Participating Employees as distributed in the Individual Allocation Schedule attached as Exhibit A to the Settlement Agreement. (*See* Ex. 3.) Inherent in the proposed distribution method in which Participating Employees are distributed settlement payments based proportionally on each Participating Employees' respective weeks of service to Defendant during the relevant period of January 16, 2021 to July 16, 2021, the settlement proposal treats Participating Employees equitably relative to each other. Named Plaintiff Halcomb, as a Participating Employee, will participate in the recovery under the same procedure applicable to other participating employees.

### B.  The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)).

In the present case, the Parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and the issues were well understood – as noted above, the Parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents, including a computational methodology that considers approximately 4,000 data points and permits a calculation of the alleged unpaid wages for the affected employees based off the actual wage and hour data as produced by Defendant. To the extent they decide to participate in the matter, each

of the 91 covered workers will receive approximately 150% of their calculated overtime damages.

### C.  The Service Award to the Named Plaintiff is Proper and Reasonable

A reasonable service award properly recognizes the Named/Representative Plaintiff's services on behalf of other beneficiaries of the settlement and their contribution to achieving a positive outcome. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990).

In this Circuit, service awards are "justified where the amed plaintiffs expend time and effort beyond that of the other class members … by actively reviewing the case and advising counsel in prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010) (approving $6,000 and $4,000 to representative Plaintiffs) (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5-6 (approving $7,500 service award to named plaintiff); *see Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053, at *4 (Nov. 18, 2019) (approving $7,500 service award); *Salinas v. United States Xpress Ents., Inc.*, E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *26 (Mar. 8, 2018) (approving $10,000 service award to named plaintiff).

Indeed, the Named Plaintiff Halcomb incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others," and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Among other things, Plaintiff Halcomb consulted with Plaintiffs' Counsel at critical stages and provided and reviewed other important documents and information throughout the course of the litigation. Furthermore, Plaintiff Halcomb faithfully represented the interests of the affected employees and ably assisted Plaintiffs' Counsel. His contribution was instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $750.00 to Plaintiff Halcomb is reasonable and well-earned.

### D.  Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10. The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)). The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages" *Fegley,* 19 F.3d at 1134-35 (quoting *Posner v. Showroom, Inc*., 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6 (6th Cir.1985)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 (May 30,

11

2012) (the fee award must be "adequate to attract competent counsel but … not produce a windfall") (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). "In determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc*., S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23, 2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)). "There is a 'strong presumption' that a prevailing plaintiff's attorney is entitled to the lodestar fee," which is "the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Id*. (citing *Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343, 350 (6th Cir.2000); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir.2004); *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

Recently, in *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616-617 (6th Cir.2021) the Sixth Circuit ordered attorney fees to be calculated based on the lodestar attorneys' fees request, as opposed to a percentage of the total recovery, noting that:

> "Neither the text nor the purpose" of the FLSA "supports imposing a proportionality limit on recoverable attorneys' fees." The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to "attract competent counsel" to represent them.

*Id.* at 616-617 (quoting *Fisher v. SD Protection Inc*., 948 F.3d 593, 603 (2d Cir. 2020); *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir.2004)). Moreover, "[i]n determining fee awards, courts should not 'become green-eyeshade accountants,' but instead must content themselves with 'rough justice.'" *Monroe v. FTS USA, LLC*, 6th Cir. No. 20-6289/6347, 2021 U.S. App. LEXIS

12

33235, at *18 (Nov. 8, 2021) (quoting *Rembert*, 986 F.3d at 618, quoting *Carter v. Hickory Healthcare, Inc*., 905 F.3d 963, 970 (6th Cir. 2018)). *See also Smyers v. Ohio Mulch Supply Inc*., 6th Cir. Nos. 21-3008, 21-3009, 2021 U.S. App. LEXIS 19634, at *5-6 (July 1, 2021).

In the present case, the efforts of Plaintiffs' Counsel resulted in proposed settlement payments to the Named Plaintiff and other participating employees representing a substantial percentage of the potential value of their claims - approximately 150% of the back overtime wage damages calculated for the Named Plaintiff and other participating employees. The proposed payments to Named Plaintiff and other participating employees – set forth in the Individual Payments Allocation Schedule (Ex. 3) – are shared among the Named Plaintiff and participating employees based proportionally on each participating employees' respective weeks of service to Defendant during the relevant period of January 16, 2021 to July 16, 2021. Moreover, the proposed payment to Plaintiffs' Counsel represents a significant reduction from the total fees and costs expended in the prosecution of the Action. The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel, attached as Exhibit 4.

Prosecuting complex litigation on a collective class basis is always difficult and time-consuming. The tasks required of Plaintiffs' Counsel in this case included pre-litigation investigation of Plaintiff's claims and the identities of potential corporate defendants; preparation of the Complaint; negotiation and submission of the parties' Rule 26(f) report; as well as drafting Plaintiff's Rule 26 Disclosures.

The parties further engaged in comprehensive discovery regarding the Plaintiffs' claims and the Defendant's defenses to such claims. This discovery and investigation has included, among other things, (a) multiple meetings and conferences with the Court, Plaintiff, and

13

Defendant's Counsel; (b) inspection and analysis of payroll and other wage and hour documents produced by the Defendant, including analysis of wage-and-hour information and other data and documents and development of a data analysis and methodology comprising of approximately 4,000 data points from the records produced by Defendant; (c) analysis of the legal positions and defenses taken by Defendant; (d) investigation into the viability of collective and class action treatment; (e) analysis of potential class-wide damages; and (f) research of the applicable law with respect to the claims and potential defenses thereto.

The resulting settlement negotiated by Plaintiffs' Counsel ensures substantial payments to the Named Plaintiff and other participating employees – approximately 150% of their calculated overtime back wages. As of May 22, 2022, at a combined fee lodestar of $23,784.50 the requested attorney fee of $19,500.00 (after deduction of $419.08 in litigation costs and expenses borne by Plaintiffs' Counsel), results in a "negative multiplier" if the Court approves the requested settlement payment as to attorneys' fees. (*See* Ex. 4 ¶ 43.) Such a negative multiplier supports that the fee sought is reasonable. *Jones v. Home Care Assistance of Cent. Ohio, LLC*, S.D.Ohio No. 2:18-cv-01342, 2019 U.S. Dist. LEXIS 213145, at *3-4 (Dec. 9, 2019); *Rikos v. P&G*, S.D.Ohio No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *26 (Apr. 30, 2018) (citing *see Walls v. JP Morgan Chase Bank, N.A.*, Case No. 3:11-cv-673-DJH, 2016 U.S. Dist. LEXIS 142325, at * 18 (W.D. Ky. Oct. 13, 2016)). In other words, while Named Plaintiff and other participating employees will recover approximately 150% of their calculated wage damages, Plaintiff's counsel has agreed to recover a reduced amount – approximately 82% – of their lodestar attorney fees incurred to date. The lodestar calculation in this matter unequivocally supports the reasonableness of the fee request.

14

In addition, the payment of attorney fees and costs includes $419.08 in reimbursable out-of-pocket expenses incurred in this case by Plaintiffs' Counsel. These expenses constitute costs that were reasonably necessary to prosecute the action. (*See* Ex. 4 ¶ 46.)

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V.    CONCLUSION

For the reasons addressed above, the Parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.


Respectfully submitted,

| | |
|---|---|
| */s Kevin M. McDermott II* | */s Naureen Amjad (via email consent)* |
| Joseph F. Scott (0029780) | David J. Stein |
| Ryan A. Winters (0086917) | Naureen Amjad |
| Kevin M. McDermott II (0090455) | Riebana E. Sachs |
| SCOTT & WINTERS LAW FIRM, LLC | MASUDA, FUNAI, EIFERT & MITCHELL, LTD. |
| The Caxton Building | 203 N. LaSalle Street, Suite 2500 |
| 812 Huron Rd. E., Suite 490 | Chicago, Illinois 60601-1262 |
| Cleveland, OH 44115 | P: (312) 245-7500 |
| P: (216) 912-2221   F: (216) 350-6313 | F: (312) 245-7467 |
| jscott@ohiowagelawyers.com | dstein@masudafunai.com |
| rwinters@ohiowagelawyers.com | namjad@masudafunai.com |
| kmcdermott@ohiowagelawyers.com | rsachs@masudafunai.com |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all Parties

indicated on the electronic filing receipt.

*/s Kevin M. McDermott II*
Kevin M. McDermott II (0090455)

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION REQUIREMENTS

I, undersigned counsel, state that this matter has been assigned to the standard track, and I

hereby certify that the memorandum contained herein complies with the page limitations established

by Local Rule 7.1(f) as a dispositive motion "which, if granted, would result in the entry of

judgment or dismissal, or would dispose of any claims or defenses, or would terminate the

litigation." *See* N.D. Ohio Local Rule 16.1(b)(5).

*/s Kevin M. McDermott II*
Kevin M. McDermott II (0090455)